**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| LIDA O'REILLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 20-cv-00490-LKG |
| v. ) | |
| ) | Dated: August 25, 2022 |
| CARLOS DEL TORO, SECRETARY OF ) | |
| THE NAVY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

In this employment discrimination action, plaintiff, Lida O'Reilly, alleges that the Department of the Navy (the "Navy") improperly removed her from federal service due to her race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. *See generally* Compl., ECF No. 1. The Secretary of the Navy, Carlos Del Toro (the "Secretary"), has moved for summary judgment in his favor on all remaining claims in this case. Def. Mot., ECF No. 44; Def. Mem., ECF No. 44-1. The motion is fully briefed. Pl. Resp., ECF No. 47; Def. Reply, ECF No. 50. No hearing is necessary to resolve this motion. *See* L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court: (1) **GRANTS** the Secretary's motion for summary judgment and (2) **DISMISSES** the complaint. *See* Fed. R. Civ. P. 56.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

  **A.    Factual Background**

This employment discrimination action involves claims that the Navy improperly

---

[1] The Secretary has provided a statement of undisputed material facts in his motion for summary judgment ("Def. SOF") and plaintiff has provided a counterstatement of undisputed material facts in her response in opposition to the Secretary's motion ("Pl. SOF"). The facts recited in this Memorandum Opinion and Order are taken from these statements; the complaint ("Compl."); the Secretary's motion for

removed plaintiff from federal service due to her race and national origin, in violation of Title VII and 42 U.S.C. § 1981. *See generally* Compl. Specifically, plaintiff alleges in the complaint that the Navy discriminated against her upon the basis of race and national origin, and treated her disparately due to her race and national origin in discipline, in hiring practices, by equating failure to communicate with her accent, and by removing her from federal service. *Id.* at ¶¶ 33-76. As relief, plaintiff seeks to recover monetary damages from the Navy. *Id.* at Prayer for Relief.

Plaintiff is a former Educational Technician for the Navy's Commander Navy Installations Command 24/7 Child Development Center (the "Child Development Center") located in Bethesda, Maryland. *Id.* at ¶ 7; Def. Mem. at 2.

Defendant, Carlos Del Toro, is the Secretary of the Navy. Def. Mem. at 1.

Plaintiff identifies her race as White and Latino, and her national origin as Colombian. Compl. at ¶ 1; Def. Mem. at 2; *see also* Def. Mot. Ex. 1 at 15:8-13 (Deposition of Lida O'Reilly). Plaintiff's highest level of formal education is high school. Def. Mem. at 2.

Plaintiff's Employment History

On May 20, 2016, plaintiff began her employment with the Navy as an Educational Technician. Def. Mem. at 2. Plaintiff's duties included: "[providing] care and supervision, oversight, and accountability for program participants," "[maintaining] control of and account[ing] for whereabouts and safety of children and youth," and "[interacting] professionally with employees." *Id*. at 3.

The Child Development Center's Standard Operating Procedures ("SOP") require that childcare professionals like plaintiff:

> l) focus their attention on the children **RATHER** than on adult tasks or personal interest; 2) **NEVER** leave children unattended; 3) provide continuous responsive supervision at **ALL** times; 4) remain in close proximity to children; [and] 5) maintain appropriate ratios at all times, notifying management when **ANY** of these practices cannot be followed.

---

summary judgment ("Def. Mot.") and the memorandum in support thereof ("Def. Mem."); and plaintiff's response in opposition thereto ("Pl. Resp."). Unless otherwise indicated, the facts recited herein are undisputed.

Def. Mot. Ex. 4 at D000001, ECF No. 44-6 (emphasis in original). In this regard, the SOP requires close monitoring of children and accountability for children, including the counting and matching of the children's names to their faces on the class roster/sign-in sheet. *Id*. And so, the SOP provides that "[i]f a child is left unattended . . . corrective action may include or lead to dismissal based on the circumstances." *Id.* at D000002.

Some familiarity with plaintiff's co-workers is necessary to understand her discrimination claims. Lisa Ordonez was plaintiff's first-line supervisor and Alysen Ware was plaintiff's second-line supervisor from the date of hiring through approximately February 2017. Def. Mem. at 2. In early 2017, Yule Pieters, the Director of the Navy's Child Development Center, became plaintiff's first-line supervisor. *Id.* In this role, Mr. Pieters was responsible for the administration of the facility to include implementation of developmentally appropriate programs, budgeting and financial management, personnel management, program operations, and compliance, among other tasks. *Id*.; *see also* Def. Mot. Ex. 2, ECF No. 44-4.

Monique Ham was an entry-level childcare worker who worked in the same classroom as plaintiff at the relevant time. Def. Mem. at 2-3. Ms. Ham is not of the same race or national origin as plaintiff. *Id*. at 3.

It is undisputed that plaintiff had difficulty getting along with her co-workers while working at the Child Development Center. *Id*.; *see also* Def. Mot. Ex. 1 at 58:5-13. In this regard, plaintiff's coworker, Sandra Jaramillo, complained about plaintiff's conduct in the classroom. Def. Mem. at 2. Plaintiff's supervisor, Alysen Ware, also informed plaintiff that she was "creating a bad atmosphere in the classroom." *Id*.

It is also undisputed that management for the Child Development Center had concerns about plaintiff's work performance beginning in 2016. *Id*. at 5; Def. Mot. Ex. 6, ECF No. 44-8; Pl. Resp. at 3. In this regard, there is no dispute that plaintiff received oral admonishments from Alysen Ware on June 16, 2016, and December 5, 2016, respectively. Def. Mem. at 5; Def. Mot. Ex. 6; Def. Mot. Ex. 7, ECF No. 44-9. It is also undisputed that, on October 5, 2016, Tiffany Smith, the Child Development Center's Training and Curriculum Specialist, prepared a memorandum for the record concerning plaintiff pulling a child up by his arm and that Jamila Aziz, the Child and Youth Program Installation Director, prepared another memorandum for the record on October 7, 2016, concerning plaintiff's lack of interaction with the children. Def. Mot.

3

Ex. 8, ECF No. 44-10; Def. Mot. Ex. 11, ECF No. 44-13; Pl. Resp. Ex. 1 at 000004, ECF No. 47-3.

There is also no dispute that plaintiff received a letter of caution from Alysen Ware on December 19, 2016.  Def. Mot. Ex. 10, ECF No. 44-12.  Lastly, it is undisputed that plaintiff received an unsatisfactory performance evaluation for the period from May 20, 2016, through September 30, 2016.  Def. Mot. Ex. 12, ECF No. 44-14.

### The June 15, 2017 Incident And Plaintiff's Removal

The material facts regarding the events leading to plaintiff's removal from her position with the Child Development Center are mostly undisputed.  On June 15, 2017, plaintiff bypassed the required count of the children before she transitioned the children to another room, "because [she] was very stressed, and it was too much that day."  Def. Mem. at 5-6, Def. Mot. Ex. 1 at 70:5-8.  Plaintiff's co-worker, Monique Ham, also did not conduct the required counting or face-matching procedure that day.  Def. Mem. at 6; Def. Mot. Ex. 1 at 70:9-13.  Plaintiff and Ms. Ham argued, and plaintiff maintains that Ms. Ham then rammed a crib occupied with a baby into plaintiff's leg.  Def. Mem. at 6; Def. Mot. Ex. 1 at 89:15-17.  Thereafter, plaintiff pushed the baby-occupied crib back at Ms. Ham.  Def. Mem. at 6, Def. Mot. Ex. 1 at 89:18-19.

After the baby-occupied-crib-shoving incident, plaintiff complained to Yule Pieters that Ms. Ham was not helping her and that she needed help.  Def. Mem. at 6; Def. Mot. Ex. 1 at 76:7-17.  Mr. Pieters responded that they would talk about it later and then proceeded to walk with plaintiff and the children to lunch.  Def. Mot. Ex. 1 at 77:14-22.

Once the children were sitting at their lunch tables, Mr. Pieters noted that a child seemed to be missing and plaintiff agreed.  Def. Mem. at 6-7.  Thereafter, Mr. Pieters went searching for the child and found the child in the bathroom.  *Id*. at 7.

After the June 5, 2017 Incident, both plaintiff and Ms. Ham were placed on administrative leave pending an investigation and they were both offered the opportunity to resign in lieu of termination.  *Id*. at 7-8; *see also* Def. Mot. Ex. 13, ECF No. 44-15; Def. Mot. Ex. 16, ECF No. 44-18.  Plaintiff declined the offer to resign.  Def. Mem. at 8.  And so, on June 28, 2017, Mr. Pieters proposed that plaintiff be removed from her position for "Unacceptable Conduct."  Pl. Resp. Ex. 1 at 000008; Def. Mot. Ex. 15, ECF No. 44-17.

On July 11, 2017, Courtney Silvestre, the Navy's Fleet and Readiness Director, issued a removal decision with an effective date of July 13, 2017. Def. Mot. Ex. 15. In the removal decision, Ms. Silvestre determined that the charge of "Unacceptable Conduct and specifications outlined in [the June 28, 2017, Notice of Proposed Removal were] fully supported."[2] *Id*. at 000259.

Plaintiff alleges that her removal from federal service is improper, because the Navy discriminated against her upon the basis of race and national origin, and treated her disparately due to her race and national origin, during her employment at the Navy's Child Development Center. *See generally* Compl. In this regard, plaintiff maintains that the Navy discriminated against her, because:

> [T]he statements they gave [to support her removal from federal service] are totally wrong. That's discrimination in my eyes.

Def. Mot. Ex. 1. at 71:13-15. Plaintiff also maintains that she was discriminated against based on her national origin while employed by the Navy, because:

> [T]hey – they made me feel every single day that I was different. If you have a group of people of certain color, all these people I worked with were African-American meaning black, and they make you feel like you don't fit in there, that's – make you feel awaked [sic], you don't belong there, it's clear it's racism.

*Id*. at 88:11-18. And so, plaintiff contends that she "really [felt] discriminated and unwanted in this place." Def. Mot. Ex. 13 at 000118.

### B.   Procedural Background

Plaintiff commenced this employment discrimination case on February 24, 2022. *See generally* Compl. On November 25, 2020, the Secretary filed an answer to the complaint. *See*

---

[2] The Commander, Navy Installations Command Instruction 5300.2 sets forth a "personnel policy for Commander, Navy Installations Command (CNIC) Nonappropriated Fund (NAF) employees and managers." Def. Mot. Ex. 5 at 000279, ECF No. 44-7. This policy allows management to terminate employees for numerous infractions. *See generally id*. Removal is an available remedy for the offense of "[d]eliberate refusal or failure or delay in carrying out any proper order, work assignment or instruction; [or for] insubordination including failure to follow local or higher level policy." *Id*. at 000301. The offense of "[d]isrespectful conduct" is also punishable by removal. *Id*. at 000302. In addition, removal is an available remedy for the offense of "[m]aking threats to other employees or [a] supervisor; fighting; [or] engaging in dangerous horseplay." *Id*. at 000302-03.

5

Ans., ECF No. 29.  On December 8, 2020, the Court granted the parties' stipulated motion to dismiss Counts III and IV of the complaint.  *See* Dec. 8, 2021, Order, ECF No. 31.

On January 4, 2022, the Secretary filed a motion for summary judgment and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 56.  *See* Def. Mot.; Def. Mem.

Plaintiff filed a response in opposition to the Secretary's motion for summary judgment on February 19, 2022.  *See* Pl. Resp.  The Secretary filed a reply in support of his motion for summary judgment on March 18, 2022.  *See* Def. Reply.

The Secretary's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

### III. LEGAL STANDARDS

#### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the

nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. Title VII Claims

Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin. *See* 42 U.S.C. § 2000e. There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp*., 973 F.2d 371, 374 (4th Cir. 1992)). To overcome a summary judgment motion based upon this method of proof, a plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* at 607 (quoting *Goldberg v. B. Green & Co., Inc*., 836 F.2d 845, 848 (4th Cir. 1988) (brackets existing)). And so, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co*., 435 F.3d 510, 520 (4th Cir. 2006) (citation omitted)

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*. *See Tuck*, 973 F.2d at 374-75. Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp*., 411 U.S. at 802. Specifically relevant to this employment

7

discrimination dispute, a plaintiff can establish a *prima facie* case of discrimination by demonstrating that: (1) she is member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse action; and (4) the adverse employment action occurred under circumstances raising an inference of unlawful discrimination. *Id.*; *see also Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc).

If a plaintiff establishes such a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its actions. In this regard, the employer's burden is merely one of production, not persuasion. *See Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). If the employer meets this burden, the presumption raised by the plaintiff's *prima facie* case is rebutted, and she must then prove that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253. In proving pretext, a plaintiff must show not only that the employer's proffered reason was false, but also that unlawful discrimination or retaliation was the real reason for the action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993).

Given this, "[t]he ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination," and the employer will still be entitled to judgment as a matter of law if "no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 153 (2000). And so, the ultimate burden of showing that the defendant intentionally discriminated or retaliated remains at all times with the plaintiff. *See Burdine*, 450 U.S. at 253.

With regards to a discrimination claim based on differential treatment, a plaintiff can demonstrate discriminatory animus by showing the employer's differential treatment of similarly situated employees outside the plaintiff's protected class. *See Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010). To adequately demonstrate a comparator, a plaintiff must show that the comparator was similarly situated in all relevant respects. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010); *see also Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the

8

employer's treatment of them for it.'" *Haywood*, 387 F. App'x at 359 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).  And so, this Court has held that a Title VII plaintiff did not establish a valid comparator under circumstances where the proposed comparator:  (1) was a director, whereas plaintiff was an administrative assistant with different responsibilities; (2) did not share the same direct supervisor with plaintiff; and (3) had a different disciplinary history than plaintiff.  *See Bagwell v. Downtown P'ship of Balt., Inc.*, No. 18-1786, 2020 WL 247293, at *9 (D. Md. Jan. 15, 2020).

IV. **LEGAL ANALYSIS**

The Secretary has moved for summary judgment in his favor on plaintiff's employment discrimination claims upon the grounds that:  (1) the undisputed material facts show that plaintiff's work performance was not meeting the Navy's legitimate expectations; (2) plaintiff has not demonstrated discriminatory animus; (3) the Navy has clearly articulated a legitimate business reason for removing plaintiff from federal employment; and (4) plaintiff has not established that the Navy's reasons were false or a pretext for discrimination based on her race or national origin.  *See generally* Def. Mem.  And so, the Secretary requests that the Court enter summary judgment in his favor and dismiss the complaint.  *Id*. at 20.

Plaintiff counters that summary judgment is not appropriate in this case, because she has established a *prima facie* case of discrimination and shown racial animus.  Pl. Resp. at 4-8.  In addition, plaintiff argues that she has shown that the Navy's proffered reason for terminating her employment was a pretext for discrimination, because:  (1) she followed the SOP during the June 15, 2017 Incident; (2) no other employee had been terminated for similar infractions; (3) her supervisors overlooked infractions by other employees; and (4) the Navy's rationale for terminating her was disparately applied.  *Id*. at 7.  And so, she requests that the Court deny the Secretary's motion for summary judgment.  *Id*. at 8.

For the reasons that follow, the undisputed material facts show that plaintiff was not meeting the Navy's legitimate expectations at the time of her removal.  The undisputed material facts also show that plaintiff cannot demonstrate discriminatory animus on the part of the Navy, because she fails to identify any similarly situated employees of a different race or national origin that were treated differently than she was for similar conduct.  And so, the Court:  (1)

9

GRANTS the Secretary's motion for summary judgment and (2) DISMISSES the complaint. *See* Fed. R. Civ. P. 56.

      **A.**      **Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination**

           **1.**      **Plaintiff Cannot Show That She Was Meeting The Navy's Legitimate Expectations**

As an initial matter, the undisputed material facts in this case show that plaintiff cannot demonstrate that she was meeting the Navy's legitimate expectations at the time of her removal from federal service. To prevail on her discrimination claims, plaintiff must show, among other things, that she was performing her job duties at a level that met the Navy's legitimate expectations at the time of her removal. *See Hill*, 354 F.3d at 285. Plaintiff cannot make such a showing in this case.

As the Secretary correctly observes, the undisputed material facts make clear that plaintiff was not meeting the Navy's legitimate expectations at the time of her removal on July 13, 2017. It is undisputed in this case that the Navy had concerns about plaintiff's work performance beginning in 2016. Def. Mem. at 5; Def. Mot. Ex. 6; Pl. Resp. at 3. Notably, there is no dispute that plaintiff received two oral admonishments on June 16, 2016, and December 5, 2016, respectively. Def. Mem. at 5; Def. Mot. Ex. 6; Def. Mot. Ex. 7. There is also no dispute that plaintiff received a letter of caution from her supervisor, Alysen Ware, on December 19, 2016, and that plaintiff received an unsatisfactory performance evaluation for the period of May 20, 2016, through September 30, 2016. *See* Def. Mot. Ex. 10; Def. Mot. Ex. 12. Given this, the undisputed material facts make clear that plaintiff was not meeting the Navy's legitimate expectations during the months preceding her removal from federal service.

Plaintiff disputes that she violated the Child Development Center's SOP on June 15, 2017. Pl. Resp. at 7. But, the undisputed material facts in this case also show that plaintiff did not perform her duties consistent with the SOP on that date.

In this regard, plaintiff acknowledges that she "bypass[ed]" the required count of the children before she transitioned the children to another room on June 15, 2017. *See* Def. Mot. Ex. 1 at 70:5-8. There can be no genuine dispute that plaintiff's conduct violated the SOP's requirement for the counting and matching of the children's names to their faces on the class roster/sign-in sheet. *See id.*; *see also* Def. Mot. Ex. 4 at D000001.

10

Plaintiff's argument that she was meeting the Navy's legitimate expectations at the time of her termination is also belied by the factual record in this case. While plaintiff acknowledges that she was disciplined on several occasions in 2016, she maintains that these disciplinary actions are too remote to show that she was not meeting the Navy's legitimate expectations when she was terminated on July 13, 2017. Pl. Resp. at 4-5. But, plaintiff points to no facts or objective evidence to show that she was meeting the Navy's legitimate expectations in 2017. *See generally id.* In fact, she points to no evidence to show that her performance improved during this period, or that the concerns with her work performance that were identified by the Navy had been successfully addressed. *See generally id.*

Given this, the undisputed material facts show that plaintiff was not meeting the Navy's legitimate expectations when she was removed from federal service on July 13, 2017. *See Hill*, 354 F.3d at 285.

### 2.     Plaintiff Cannot Show Differential Treatment To Support Her Claims

Plaintiff's *prima facie* case of discrimination is also problematic, because the undisputed material facts make clear that plaintiff cannot show that the Navy treated her differently than other similarly situated employees of a different race or national origin. Plaintiff can demonstrate discriminatory animus on the part of the Navy by showing that the Navy engaged in differential treatment of similarly situated employees outside of her protected class. *See Coleman*, 626 F.3d at 190. To do so here, plaintiff must identify a similarly situated employee and demonstrate that this comparator was similarly situated to her in all relevant respects. *See Haywood*, 387 F. App'x at 359; *Lightner*, 545 F.3d at 265.

The Court agrees with the Secretary that plaintiff has not met this standard. To support her disparate treatment claim, plaintiff argues that the Navy treated and disciplined her colleagues, Monique Ham and Yule Pieters, differently than how the Navy treated and disciplined her. Pl. Resp. at 6. Specifically, plaintiff argues that Monique Ham "was credibly accused, with video evidence, of having committed an intentional battery on work premises against [p]laintiff to precipitate the [June 15, 2017, Incident], had a history of complaints of being insubordinate and hostile to [p]laintiff, and yet [p]laintiff was treated like just as much the perpetrator as Ham." *See id*. With regard to Yule Pieters, plaintiff also argues that Mr. Pieters is alleged to have also lost a child on June 15, 2017, but that "no investigation has been undertaken

by [the Navy]." *Id.*

But, the undisputed material facts show that Ms. Ham was not treated differently than plaintiff following the June 15, 2017 Incident. Notably, there is no dispute in this case that, like plaintiff, Ms. Ham was placed on administrative leave, investigated, and ultimately offered the opportunity to resign her position after the June 15, 2017 Incident. Def. Mem. at 19; *see generally* Pl. Resp. Unlike plaintiff, Ms. Ham resigned prior to the completion of the investigation. *See* Def. Mot. Ex. 1 at 85:2-6; 86:9-21. And so, the undisputed material facts show that the Navy disciplined Ms. Ham in the same manner as plaintiff up to the point of her resignation.

The Secretary also persuasively argues that Yule Pieters is not a valid comparator to plaintiff, because, as Director of the Navy's Child Development Center, Mr. Pieters had substantially different duties than plaintiff. It is undisputed that Mr. Pieters held a supervisory position at the Child Development Center, while plaintiff did not. *See* Def. Mem. at 14; Def. Mot. Ex. 2; *see generally* Pl. Resp. Notably, Mr. Pieters was responsible for the proper administration and operation of the Child Development Center. *See* Def. Mem. at 14; Def. Mot. Ex. 2.

By comparison, plaintiff was responsible for headcounts and proper child supervision. Def. Mem. at 14; Def. Mot. Ex. 3. Mr. Pieters is also not alleged to have been involved in the altercation between plaintiff and Ms. Ham on June 15, 2017. *See generally* Compl.; Pl. Resp. Given these undisputed material facts, Mr. Pieters is simply not a valid comparator to plaintiff. *See Haywood*, 387 F. App'x at 359; *Lightner*, 545 F.3d at 265. And so, plaintiff cannot show that the Navy treated her differently than other similarly situated employees of a different race, or national origin, to support her employment discrimination claims.

Because plaintiff can neither show that she was meeting the Navy's legitimate expectations at the time of her removal, nor that the Navy treated similarly situated employees of a different race or national origin differently than she was treated for similar conduct, she cannot

establish a *prima facie* case of discrimination in this case. And so, the Court must GRANT the Secretary's motion for summary judgment.[3]  *See* Fed. R. Civ. P. 56.

## V. CONCLUSION

In sum, the undisputed material facts show that plaintiff was not meeting the Navy's legitimate expectations at the time of her removal. The undisputed material facts also show that plaintiff cannot demonstrate discriminatory animus on the part of the Navy, because she fails to identify any similarly situated employees of a different race or national origin that were treated differently than she was treated for similar conduct. And so, for the foregoing reasons, the Court:

1. **GRANTS** the Secretary's motion for summary judgment; and
2. **DISMISSES** the complaint. *See* Fed. R. Civ. P. 56.

Judgment is entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[3] Because the Court concludes that plaintiff cannot establish a *prima facie* case of discrimination, the Court does not reach the remaining issues raised in the Secretary's motion for summary judgment.